UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
In re:

DANIEL B. TOLMAN

                      Debtor.
------------------------------------------------------------------ x

Case No. 14-70966 (REG)

Chapter 7

**AFFIDAVIT IN OPPOSITION TO THE MOTION OF THE UNITED STATES TRUSTEE TO DISMISS THE CASE PURSUANT TO 11 U.S.C. § 707(b)(1) AND (3)**

STATE OF NEW YORK   )
                               ) s.s.
COUNTY OF SUFFOLK   )

**MICHAEL J. MACCO,** being duly sworn, deposes and says:

1. I am the attorney for the debtor, Daniel B. Tolman (the "Debtor"), and, as such, am fully and completely familiar with the facts and circumstances involved herein.

2. I submit this affidavit in opposition to the motion filed by the Office of the United States Trustee (the "UST") seeking dismissal of this Chapter 7 case pursuant to sections 707(b)(1) and (3) of title 11 of the United States Code (the "Bankruptcy Code").

3. The UST claims that the reason this case should be dismissed is because the case was filed in bad faith or, alternatively, based on the totality of the circumstances.

## BACKGROUND

4. In 2005, the Debtor worked with his father, Bruce Tolman ("Bruce") in the insurance business.

5. Due to a downturn in the insurance business, Bruce convinced the Debtor to purchase homes in the Debtor's name, using the Debtor's credit, but for the benefit of Bruce and his business. Bruce and the Debtor agreed that the Debtor would purchase real property, but Bruce would make mortgage and other necessary payments.

6. In 2005, Bruce convinced the Debtor to purchase real property known as and located at 290 Berry Hill Road, Syosset, New York (the "Real Property") on Bruce's behalf.

7. On or about October 26, 2005, Bruce had the Debtor execute a mortgage and note (the "First Mortgage"). The current value of the First Mortgage, including late fees, is approximately $1,800,000.00.

8. On or about February 20, 2007, Bruce convinced the Debtor to execute a home equity line of credit (the "HELOC"). The current value of the HELOC, including late fees, is approximately $425,000.00.

9. Additionally, Bruce hired Donald Jaffe, Inc., to do work on the Real Property. As part of their agreement, Bruce convinced the Debtor to remain obligated to Donald Jaffe, Inc., for payment. On Schedule F of the Debtor's Petition, the Debtor listed Donald Jaffe, Inc., as a creditor holding an unsecured claim in the amount of $357,081.80 (the "Jaffe Judgment").

10. Moreover, Bruce convinced the Debtor to sign various personal guarantees for Bruce's debts arising from the renovation of the Real Property as well as guarantees for monies lent to help Bruce's insurance business. Schedule F of the Debtor's Petition includes two claims, in the amount of $30,000.00 and $100,000.00, resecptively, both of which arise from personal guarantees (the "Guarantees") the Debtor entered into at the request of Bruce.

11. Between 2007 and the Petition Date, the value of real property across the nation dropped significantly, including the value of the Real Property.

12. Due to the economic downturn, Bruce stopped trying to rehabilitate and sell real property, including the Real Property. Due to Bruce's influence, the Debtor was left obligated on the First Mortgage and HELOC, as well as the Jaffe Judgment and Guarantees.

13. Until March 2014, Bruce and the Debtor lived in the Real Property together.

14. Since 2012, the Debtor has been employed by Willis of Texas, Inc ("Willis"). However, Bruce remained unemployed.

15. Since Bruce was unemployed, the Debtor was forced to pay all bills and living expenses, including food, for Bruce and himself.

16. On or about March 2014, the Debtor received an offer for a new position at Willis located in Minneapolis, Minnesota, which the Debtor accepted.

17. As part of his new position, the Debtor was forced to relocate to Minneapolis, Minnesota.

18. Due to his relocation, the Debtor was forced to rent an apartment in Minneapolis, Minnesota.

19. Due to his relocation, the Debtor was forced to pay household bills and expenses, including utilities and food, in Minneapolis, Minnesota.

20. In addition to rental payments for his apartment, the Debtor continues to pay some of the household bills on the Real Property because Bruce continues to reside in the Real Property.

## UST ALLEGATIONS

**Ability to Repay a Significant Portion of His Debts**

21. The first basis for the UST's objection is that the UST believes the Debtor has an ability to repay a significant portion of his debt.

22. The UST states the Debtor's household consists of one person and his 2014 income will exceed the New York State median income. Although the Debtor does have a household consisting of one person, he also pays for expenses related to Bruce, who is

unemployed. Although Bruce is not a dependant, a significant portion of his finances go to assist Bruce while he lives at the Real Property.

23.   Second, the UST states that the Minneapolis, Minnesota, the Debtor's new place of residence, is significantly more affordable than Long Island, New York. Other than a "CNN Money" article, the UST provides no factual basis for this allegation. Additionally, the Debtor still has obligations arising from Long Island, and, as such, his expenses reflect both New York and Minnesota expenses. Moreover, the Debtor needed to lease a new vehicle in Minnesota to get to and from work.

24.   Third, the UST alleges that Schedule J of the Debtor's Petition was constructed to mislead the Court and his creditors, particularly in light of his subsequent relocation and inclusion of mortgage payments which were not being made. The relocation of the Debtor to Minnesota was unforeseen. At the time of the filing, the Debtor's Petition and Schedules were accurate and correct. Thereafter, upon his relocation and subsequent demands from the UST, the Debtor amended his Petition and Schedules to include his new living expenses, new vehicle lease, and other new bills. Although the Debtor was not making the mortgage payments for the First Mortgage or HELOC, the Debtor included both in his original Schedule J. Upon request of the UST, the Debtor amended his Schedule J and omitted those payments.

25.   Fourth, the UST alleges that Schedule J of the Debtor's Petition is overstated and unreasonable. Amended Schedule J of the Debtor's Petition is an accurate reflection of the Debtor's expenses at the time of amendment, which was shortly after the Debtor relocated to Minnesota. Despite the UST allegations, the only reason Schedule J seems overstated is because of the associated costs with the Debtor's relocation. Although the UST asserts that these expenses are overstated and unreasonable, these Schedules are correct.

26. Additionally, assuming, *en arguendo*, that the Debtor's expenses are overstated, this does not create a presumption that the Debtor has an ability to repay a significant portion of his debts.

27. As the UST is aware, the Debtor is above the Chapter 13 debt limits contained in Bankruptcy Code §109(e). If the Debtor was forced to file a plan of reorganization, it would be under Chapter 11 of the Bankruptcy Code.

28. The cost of administering a hypothetical Chapter 11 for the Debtor would be far greater than the Debtor's ability to repay his creditors. Accordingly, the Debtor's alleged assets, including his alleged extra income, would only benefit the attorneys, other retained professionals and UST.

29. Not only would the hypothetical Chapter 11 not benefit the Debtor's creditors, it is unlikely a Chapter 11 plan would be confirmed. The bulk of the Debtor's liabilities consist of the First Mortgage and HELOC. Accordingly, a proposed plan under Chapter 11 would need to include both as impaired classes. Considering the current value of the Real Property, and the value of: (1) the secured portion of the First Mortgage; (2) the unsecured portion of the First Mortgage; and (3) the wholly unsecured HELOC; it is likely that the only secured claim would vote to reject the plan, and the unsecured class creditors would be carried by the rejection votes arising from the unsecured portion of the First Mortgage and the HELOC.

30. Additionally, if the Debtor had a plan confirmed, most, if not all, of his payments under the Plan would likely go to either the secured portion of the First Mortgage, or the deficiency arising from the First Mortgage. Any other payments to general unsecured creditors would be dominated by the HELOC.

31. Thus, even if the Debtor had an ability to pay, such ability would not incur a benefit to the Debtor's estate or his creditors other than the First Mortgage and HELOC.

32. Based on the foregoing, the Debtor respectfully submits that the Debtor has no ability to repay a significant portion of his debts.

**Additional Factors under the Totality of the Circumstances Test**

33. The UST asserts that the Debtor did not get forced in Chapter 7 by unforeseen or catastrophic events, but rather enjoyed years of significant income, spent lavishly on entertainment, and accrued $2.5 Million in debt over years of spending. As set forth above, a significant portion of the debt accrued by the Debtor was for the First Mortgage, HELOC, Jaffe Judgment and the Guarantees, all of which relate back to Bruce's investment in the Real Property. When considering the Debtor's liabilities, it is obvious that, without the First Mortgage, HELOC, Jaffe Judgment or Guarantees, the Debtor has not spent lavishly over the years. Although the Debtor may not have demonstrated as much restraint as he could of, the Debtor was forced into bankruptcy by the First Mortgage, HELOC, Jaffe Judgment and Guarantees, which all arise from the loss in value of the Real Property due to downturn of the United States economy, which was unforeseen and catastrophic.

34. The UST asserts that the Debtor's household gross annual income exceeds $127,000.00 and is steady and consistent. Although the Debtor's household gross annual income does exceed the New York State median income for a one person household, this is alone is not sufficient to prove that the Debtor's Chapter 7 case should be dismissed, converted, or his discharge denied. As shown on Amended Schedule J to the Debtor's Petition, although the Debtor has a relatively high annual income, he has necessary and appropriate expenses which exceed his income.

35. The UST alleges the Debtor is eligible for relief under Chapter 11 of the Bankruptcy Code. As set forth above, although the Debtor may be eligible to file a case under Chapter 11 of the Bankruptcy Code, that case would not benefit his creditors, and would likely cost more than his alleged extra income.

36. The UST alleges that the Debtor has enjoyed a steady source of income. Although the Debtor has enjoyed a steady source of income from Willis since he was hired in 2012, a large portion of his liabilities pre-date his employment, which is why he filed this case under Chapter 7 of the Bankruptcy Code.

37. The UST alleges that the Debtor has made no changes to his life style in an attempt to repay some portion of these obligations. In fact, the Debtor has made drastic changes to his lifestyle. Instead of attempting to continue a career in real property rehabilitation, the Debtor found a job as an insurance broker for Willis, a completely different area. Moreover, the Debtor has done everything he can to advance his career at Willis, including relocating to a different city and state without the support circle of his family. Notwithstanding the foregoing, based on Schedule J to the Debtor's Petition, even if he attempted to begin paying back his debt, he would be operating at a loss. Although the Debtor has not repaid his mortgage in sometime, if he attempted cure his arrears, it would be a frivolous attempt as the face value of the First Mortgage alone, or with the HELOC, far exceeds the value of the Real Property, which has drastically decreased.

38. Finally, the UST alleges that the Debtor filed schedules which were misleading and inaccurate, including Schedules I and J. Both the originally filed and amended Schedules I and J accurately represent the Debtor's income and expenses, respectively. Although the UST alleges that they are either miscalculated or excessive, it is that they are correctly calculated, but

slightly excessive given the unique nature of the Debtor's position, including his relocation. This alone is not grounds to dismiss or convert the Debtor's Chapter 7 case, or deny the Debtor's discharge.

**Debtor's Arguments**

39.   Most of the debts on the Petition are not consumer debts. As stated above, the majority of debts listed on the Debtor's Petition are related to Bruce's business and the Real Property, which was purchased as an investment and business opportunity. Accordingly, the first portion of Bankruptcy Code §707(b) is not satisfied.

40.   The Debtor was a shill for Bruce's liabilities. Most of the Debtor's debts are related to the Real Property and Bruce's business. The Real Property is the Debtor's largest asset and is also responsible for most of the Debtor's liabilities. The Debtor needs his discharge in order to relieve liability related to the potential deficiency judgment from the First Mortgage and get a fresh start, which was part of the reason for his relocation to Minneapolis.

41.   The Debtor has no other means to work out his financial problems, there are no state remedies to ease the Debtor's financial predicaments, and private negotiations will likely fail. The value of the Real Property has decreased so much since its purchase that, without a discharge under Chapter 7, the Debtor will remain obligated on the First Mortgage and any subsequent deficiency judgment. It is unlikely that the Debtor will be able to pay back any other creditor, or even the deficiency in full, at any point in the foreseeable future. As stated above, the Debtor will not succeed in confirming a plan if this case is converted to a case under Chapter 11 of the Bankruptcy Code, and the Debtor is not eligible for a case under Chapter 13 of the Bankruptcy Code. Moreover, any potential loss mitigation or loan modification is unlikely to succeed based on the low value of the Real Property, the high value of the First Mortgage, the

HELOC, and the fact that the Real Property is not the Debtor's residence. Accordingly, a discharge under Chapter 7 of the Bankruptcy Code is the Debtor's only option.

42. The Debtor did not engage in eve of bankruptcy purchases, has not made consumer purchases or cash advances far in excess of his ability to pay. As stated above, the Debtor was forced into bankruptcy by Bruce and the Real Property. Most of his debt is related to the Real Property, not consumer purchases. Although he did take out the HELOC, it was not a cash advance on his credit card, but a loan secured by the Real Property. However, since the execution of the HELOC, the value of the Real Property has drastically dropped, leaving it wholly unsecured.

**WHEREFORE,** it is respectfully submitted that the UST's motion to dismiss the Debtor's Chapter 7 case, or, alternatively, extend the time to commence an adversary proceeding to deny the Debtor's discharge, be denied.

_____
MICHAEL J. MACCO

Sworn to before me this
15th day of October, 2014

_____
Notary Public

Cooper J Macco
Notary Public, State of NY
No. 02MA6279300
Qualified in Suffolk County
Commission Expires April 8, 2017

STATE OF NEW YORK)
COUNTY OF SUFFOLK)ss:-

    Carol Smith, being duly sworn, deposes and says: deponent is not a party to the action, is over 18 years of age, and resides at West Islip, New York.

    On October 15, 2014 deponent served the within:

AFFIDAVIT IN OPPOSITION TO THE MOTION OF THE
UNITED STATES TRUSTEE TO DISMISS THE CASE

upon the following parties, at the addresses designated by said parties for that purpose, by depositing a true copy of same, enclosed in a post-paid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

*Office U.S. Trustee*
*Long Island Federal Courthouse*
*560 Federal Plaza, Room 560*
*Central Islip, New York  11722-4437*

*Allan B. Mendelsohn, Esq.*
*38 New Street*
*Huntington, New York  11743*

                                                                         /s/ Carol Smith
                                                                         Carol Smith

Sworn to before me this
15th day of October, 2014.
/s/ Janine M. Zarrilli
Notary Public
*Janine M. Zarrilli*
*Notary Public, State of New York*
*No. 01ZA5084708*
*Qualified in Nassau County*
*Commission Expires September 8, 2017*